UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
FRANKFORT DIVISION

| | |
|---|---|
| JIM OLIVER )<br>)<br>Plaintiff, )<br>) No. _____<br>v. )<br>)<br>JACKSON FAMILY ENTERPRISES, INC., )<br>)<br>And )<br>)<br>STONESTREET FARM, LLC )<br>)<br>Defendants )<br>) | |

**COMPLAINT**

\* \* \* \* \* \* \* \* \* \* \* \*

Comes now the Plaintiff, Jim Oliver, and for his claims against the Defendants, Jackson Family Enterprises, Inc. (hereinafter referred to as "JFE") and Stonestreet Farm, LLC (hereinafter referred to as "Stonestreet," or, collectively, as "Defendants"), states as follows:

**PARTIES**

1. The Plaintiff, Jim Oliver (hereinafter referred to as "Plaintiff" or "Mr. Oliver"), is domiciled in the Commonwealth of Kentucky, residing in Lawrenceburg, Anderson County, Kentucky. Mr. Oliver was jointly employed by Defendants as a pilot while based out of Lexington, Kentucky from July 31, 2018 until his illegal termination on or about May 4, 2020.

2. Co-Defendant JFE is a corporation headquartered in California. At all times relevant to the Complaint, JFE was registered to do business in Kentucky, and did, in fact, carry out

substantial business in the Commonwealth of Kentucky. JFE can be served via its Registered Agent at Corporation Service Company 421 West Main Street Frankfort, Kentucky 40601.

3. Co-Defendant Stonestreet is a limited liability corporation headquartered in Lexington, Kentucky. At all times relevant to the Complaint, Stonestreet was registered to do business in Kentucky, and did, in fact, carry out substantial business in the Commonwealth of Kentucky. Stonestreet can be served via its Registered Agent at Corporation Service Company 421 West Main Street Frankfort, Kentucky 40601.

## JURISDICTION AND VENUE

4. Mr. Oliver's claims are in excess of the jurisdictional minimum of this Court.

5. This Court has federal question jurisdiction over Mr. Oliver's claims pursuant to 28 U.S.C. § 1331.

6. Before filing this suit, Mr. Oliver filed a charge with the EEOC and received a right to sue letter. This suit has been filed within ninety (90) days after Mr. Oliver received the EEOC's right to sue letter.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, as Mr. Oliver conducted substantial business on behalf of Defendants in the Eastern District of Kentucky, the Defendants are subject to the Court's personal jurisdiction, and Defendant Stonestreet is domiciled within the Eastern District of Kentucky.

8. Service herein on Defendants is proper pursuant to Federal Rule of Civil Procedure 4(h)(B).

## UNDERLYING FACTS

**9.** Mr. Oliver began his joint employment with Defendants on or about July 31, 2018.

10. As a pilot for the Defendants, Mr. Oliver was based out of Lexington, Kentucky. Mr. Oliver was one of two pilots assigned to the aircraft located in Lexington.

11. Mr. Oliver's primary duties involved flying individuals employed by and/or associated with Stonestreet around the United States. By way of example, Mr. Oliver would often fly horse trainers to the sites of various horse races.

12. While employed by Defendants, Mr. Oliver had a stellar record of safety and was never disciplined.

13. Before being hired by the Defendants, Mr. Oliver had been a Professional pilot for almost thirty-one (31) years. Mr. Oliver also spent over twenty-one (21) years in the Army, with eighteen (18) of those years as an Officer. Mr. Oliver's last duty assignment was as the Supervisory Instructor Pilot (UH60, Blackhawk) of an Air Assault Company.

14. During most of his tenure with Defendants, Mr. Oliver reported to the Director of Aviation, Shane Bortscheller ("Mr. Bortscheller"). Since Mr. Oliver worked out of Lexington and Mr. Bortscheller worked out of Santa Rosa, California, they did not often have face-to-face interactions.

15. On the occasions when Mr. Oliver and Mr. Bortscheller did see each other in person in the year before Mr. Oliver's termination, Mr. Bortscheller's behavior was both inexcusable and illegal.

16. On May 4, 2019, shortly after Mr. Bortscheller had been given the Director of Aviation position, the entire aviation department was in Lexington to meet during the Kentucky Derby. That morning, Mr. Oliver had stopped by the hotel where the aviation department was staying to pick up one of the Company's Dispatchers. When Mr. Oliver walked into

the hotel's breakfast area, Mr. Bortscheller told Mr. Oliver that he needed to speak with him privately. The two made their way to a private space in the back of the dining area.

17. As the pair neared the edge of the dining area, Mr. Bortscheller pointed and said, "There!" Mr. Oliver pointed and asked, "That table?" Mr. Bortscheller said, "No, the chair. I'm going to bend you over that chair!" Mr. Oliver was taken aback. He raised his hands up and said, "Whoa!" Mr. Bortscheller continued, "Don't worry, it will only hurt a little at first." Mr. Oliver further objected to Mr. Bortscheller's sexual comments by telling Mr. Bortscheller that his comments were inappropriate. Mr. Bortscheller retorted, "You think?!" Mr. Oliver once again objected by stating that Mr. Bortscheller's comments were highly inappropriate. Mr. Bortscheller responded, "Oh, that's because you've never tried it!" Mr. Oliver's face and demeaner further evinced his opposition and objection to Mr. Bortscheller's sexual remarks.

18. Mr. Bortscheller and Mr. Oliver eventually conducted their private meeting. Throughout their meeting, Mr. Bortscheller intimidatingly glared at Mr. Oliver, who repeatedly looked away from Mr. Bortscheller's intense gaze, as he was ashamed at the sexualized exchange that had just taken place with his boss.

19. During their meeting, Mr. Bortscheller explained the new bonus system, which would provide Mr. Oliver with the potential to make a bonus equal to 15% of his salary.

20. That same day, Mr. Oliver reported Mr. Bortscheller's sexual harassment to Chief Pilot Tim Wolcott, the second-highest ranking member of the Aviation Department. Mr. Wolcott did not appear to take Mr. Oliver's report seriously, and ominously warned Mr. Oliver, "Don't go up against Shane, you'll lose."

21. Upon information and belief, Mr. Bortscheller is homosexual. Had Mr. Bortscheller never made inappropriate sexual advances towards Mr. Oliver in the workplace, Mr. Bortscheller's sexual orientation would have never been an issue for Mr. Oliver. By way of background, Mr. Oliver's late brother was homosexual and tragically passed away from HIV/AIDS. Mr. Oliver loved his brother and his sexual orientation was never an issue. However, Mr. Oliver has absolutely no tolerance for sexual harassment.

22. In October 2019, Mr. Oliver received his bonus for the year. Despite JFE exceeding all its financial goals, and Mr. Oliver's stellar performance, he received less than half of his potential 15% bonus. It was apparent to Mr. Oliver that Mr. Bortscheller, who decided Mr. Oliver's bonus payment, was retaliating against Mr. Oliver for his rejection of Mr. Bortscheller's sexual advances during their last in-person meeting.

23. In March of 2020, Mr. Oliver saw Mr. Wolcott again during a layover in Amarillo, Texas. Mr. Oliver followed up regarding his previous report, asking if anything was going to be done about Mr. Bortscheller. Mr. Wolcott replied that nothing was going to be done, and reiterated his previous warning that Mr. Bortscheller was a Jackson family favorite, and that if Mr. Oliver went up against Mr. Bortscheller, he would lose.

24. The next time Mr. Oliver saw Mr. Bortscheller in person was on April 22, 2020, when they were both at the Ocala, Florida airport at the same time. Mr. Oliver was departing within an hour and he was preparing his plane for takeoff. Mr. Bortscheller arrived at the airport in shorts and sneakers. Mr. Oliver jokingly commented on Mr. Bortscheller's apparel by stating, "casual day?" Mr. Bortscheller responded, "No, I'm going to change in the plane, do you want to watch?" Mr. Oliver rejected and opposed Mr. Bortscheller's advance, responding, "I'll pass." Mr. Bortscheller started walking off and said, "Okay, you had your

chance." As he departed, Mr. Bortscheller looked back and gave Mr. Oliver a flirty smile before getting on his plane.

25. Less than two weeks after this incident, Mr. Bortscheller retaliatorily singled out Mr. Oliver for termination, falsely alleging that it was due to the "economy." Mr. Oliver was the only one of the Defendants' pilots to be down-sized at this time.

26. Mr. Oliver's termination was pretextual because, among other things, it made no financial sense to terminate Mr. Oliver, as he was one of only two pilots based out of Lexington, Kentucky. Since nearly all of Defendants' Lexington-based flights required two pilots, terminating Mr. Oliver meant that Defendants either had to incur the expense of bringing in another one of their pilots from out of state for each flight, or paying the premium cost of a contract pilot for each flight. Either way, this meant that the Defendants incurred more expenses as a result of terminating Mr. Oliver than they would have otherwise.

27. In reality, Mr. Bortscheller terminated Mr. Oliver because he did not go along with his sexual advances, and because Mr. Oliver bluntly opposed them, and suffered retaliation for having reported and opposed this conduct.

28. Upon information and belief, Mr. Oliver is not the first male pilot that Mr. Bortscheller has sexually harassed. Also upon information and belief, the Defendants are aware of Mr. Bortscheller's previous, sexually harassing conduct.

## COUNT I

### QUID PRO QUO SEXUAL HARASSMENT

29. Mr. Oliver incorporates and reiterates the allegations contained in the foregoing Paragraphs, inclusive, as if set forth herein.

30. Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a), as stated in its text and as it has been interpreted by the Courts, prohibits sexual harassment in the workplace.

31. Quid pro quo sexual harassment occurs when the submission to or rejection of sexual harassment and/or conduct by an employee is used as the basis for employment decisions affecting such individual. *See, e.g.,* 29 C.F.R. § 1604.11(a)(3).

32. Quid pro quo sexual harassment is also illegal under the Kentucky Civil Rights Act, KRS Chapter 344, *et seq.*

33. As described in the foregoing paragraphs, Mr. Oliver was subjected to unwanted sexual harassment and/or sexual conduct by his supervisor, Mr. Bortscheller.

34. Mr. Oliver's rejection of Mr. Bortscheller's sexual harassment and/or sexual conduct was used as the basis for the decision to terminate Mr. Oliver's employment with Defendants.

35. Among other things, the purported reason given for Mr. Oliver's termination – the economy – was not the real reason for his termination and was merely a pretext for an illegal reason.

36. As a result of the above-described conduct, the Defendants have engaged in illegal quid pro quo sexual harassment towards Mr. Oliver.

37. By reason of the Defendants' illegal conduct suffered by Mr. Oliver, he is entitled to legal and equitable remedies, pursuant to Title VII and/or KRS 344.040, *et seq*, including, but not limited to, compensatory damages in the form of past and present lost wages and past, present, and future emotional distress damages as well as his reasonable attorney's fees and costs incurred in bringing this action.

38. Defendants' violations of the law also were wanton, grossly negligent, malicious, reckless, outrageous in character, oppressive, and demonstrated a complete disregard for and

indifference to the Plaintiff and other employees, thus rendering Defendants liable to the Plaintiff for punitive damages.

## COUNT II

### TITLE VII and KRS 344.280 RETALIATION

39. Mr. Oliver incorporates and reiterates the allegations contained in the foregoing Paragraphs, inclusive, as if set forth herein.

40. Mr. Oliver engaged in legally protected activity under Title VII and KRS Chapter 344, including, but not limited to, his opposition and/or rejection of Mr. Bortscheller's sexual harassment and/or sexual conduct and Mr. Oliver's reporting and opposition to such illegal conduct.

41. As a result of Mr. Oliver's legally protected activity, Defendants engaged in adverse action against Mr. Oliver, including, but not limited to, the termination of his employment.

42. Defendants had no legitimate reason to subject Mr. Oliver to the above-described adverse treatment.

43. By participating in the above actions, the Defendants have committed against Mr. Oliver the unlawful practice of retaliation under Title VII, *et seq.* and/or KRS 344.280, *et seq.*

44. By reason of the Defendants' illegal retaliation, Mr. Oliver is entitled to legal and equitable remedies, pursuant to Title VII and/or KRS 344.040, *et seq*, including, but not limited to, compensatory damages in the form of past and present lost wages and past, present, and future emotional distress damages as well as his reasonable attorney's fees and costs incurred in bringing this action.

45. Defendants' violations of the law also were wanton, grossly negligent, malicious, reckless, outrageous in character, oppressive, and demonstrated a complete disregard for and indifference to the Plaintiff and other employees, thus rendering Defendants liable to the Plaintiff for punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Jim Oliver hereby demands judgment against Defendants Jackson Family Enterprises, Inc. and Stonestreet Farm, LLC, jointly and severally, for all relief allowed by law, including:

(a) a trial by jury;

(b) compensatory damages, including, without limitation, past and present lost wages, humiliation and embarrassment, emotional distress and anxiety, and other non-pecuniary damages allowed by law for the unlawful discrimination, harassment and retaliation against Plaintiff, including his reasonable attorneys' fees and expenses, all in excess of the jurisdictional limits of this Court;

(c) punitive damages pursuant to Title VII;

(d) reasonable attorney's fees, reasonable expert witness fees, and other costs of the action pursuant to Title VII, *et seq* and KRS Chapter 344, *et seq.*;

(e) interest calculated at the prevailing rate;

(f) equitable relief by this Court as may be appropriate; and

(g) any and all other relief to which he may be entitled.

Respectfully submitted,

ROARK & KORUS, PLLC

   */s/ Tyler Z. Korus*
Robert L. Roark, Esq.
Tyler Z. Korus, Esq.
ROARK & KORUS, PLLC
401 Lewis Hargett Cr., Ste. 210
Lexington, Kentucky 40503
Telephone: 859-203-2430
Facsimile: 859-523-6351
Rob@roarkkorus.com
Tyler@roarkkorus.com
*Counsel for Jim Oliver*