UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| JIM OLIVER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 21-042-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| JACKSON FAMILY | ) | **CORRECTED MEMORANDUM** |
| ENTERPRISES, INC., et al., | ) | **OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants Jackson Family Enterprises, Inc. ("JFE") and Stonestreet Farm, LLC, have filed a motion for summary judgment. [Record No. 6] Their motion seeks to enforce an arbitration agreement signed by Plaintiff Jim Oliver. However, because the Defendants have not met their burden to show that Oliver agreed to arbitrate his claims against Stonestreet, the motion will be granted with respect to Oliver's claims against JFE but denied with respect to his claims against Stonestreet.

I.

Oliver was jointly employed as a pilot by JFE and Stonestreet.[1] [Record No. 1, ¶ 1] When he began his employment with JFE in July 2018, Oliver signed an arbitration agreement. [Record No. 6-4, pp. 5–7] As relevant here, it states that:

---

[1] Neither this statement, nor the summary of the defendants' arguments on page 4 of this Memorandum Opinion and Order, should be taken to suggest that the defendants accept Oliver's allegation that they jointly employed him as a pilot. [*See* Record Nos. 4, ¶ 1; 5, ¶ 1 (denying the allegation).] While they argued that their alleged joint-employer status compelled arbitration under the Arbitration Agreement [Record No. 6-1, p. 3], that argument was based on Oliver's allegations only.

- 1 -

> [I]n the event of any legal dispute, claim or controversy (referred to as "claim" or "claims") between the Employee and Company (*or any of the Company's parent companies, shareholders, subsidiaries, divisions and/or affiliates and/or any of its or their respective officers, partners, directors, members, managers, employees, agents or employees*) (collectively referred to as "Company") arising out of or relating to this Agreement or the Employee's recruitment, application, hiring (*or non-selection for employment opportunities*) or the Employee's employment (*or termination of employment*) with the Company, both Employee and the Company agree to submit such claim to final and binding arbitration.

[*Id.* at 7 (emphasis in original)] An employee handbook further explains JFE's "belie[f] that employment disputes are best resolved through arbitration rather than formal litigation." [Record No. 6-2, p. 7] Oliver separately acknowledged the Arbitration Agreement when he signed the employee handbook. [*Id.* at 44] Stonestreet is not mentioned in any of the agreements or documents provided.

In his Complaint, Oliver alleges both *quid pro quo* sexual harassment and retaliation under Title VII and Kentucky law. [Record No. 1, ¶¶ 29–45] He asserts that he was terminated from his position due to his rejection and reporting of sexual harassment in the workplace. [*Id.*] The Defendants have now filed a motion for summary judgment which is, in effect, a motion to compel arbitration.

## II.

The standard for evaluating motions to compel arbitration overlaps with the summary judgment standard. *See Great Earth Cos., Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002) ("The [nonmovant's] required showing mirrors that required to withstand summary judgment in a civil suit."). A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see also Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).

When a motion for summary judgment is properly supported, the non-moving party must respond with "specific facts" indicating a "genuine issue" for trial. *Celotex*, 477 U.S. at 324. And at this stage, all facts and inferences drawn from the evidence are viewed "in the light most favorable to the nonmoving party." *Black v. Pension Ben. Guar. Corp.*, 983 F.3d 858, 862 (6th Cir. 2020) (citation omitted).

The Federal Arbitration Act—"which evidences a strong policy preference in favor of arbitration"—governs mandatory arbitration agreements. *Mazera v. Varsity Ford Mgmt. Servs., LLC*, 5656 F.3d 997, 1001 (6th Cir. 2009) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 111 (2001)). "When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Specifically, it must determine: (1) "whether the parties agreed to arbitrate"; (2) "the scope of that agreement"; (3) whether Congress intended any federal statutory claims "to be nonarbitrable"; and (4) "whether to stay" any remaining claims while arbitration takes place. *Id.* at 714. In conducting this "limited review," any "doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)).

**III.**

Oliver does not dispute that he agreed to arbitrate with JFE. [*See* Record No. 11.] For good reason, as the agreement is signed by Oliver and is undoubtedly an agreement to arbitrate.

[Record No. 6-4, pp. 5–7]; *see also Stout*, 228 F.3d at 715 (enforcing an arbitration agreement a plaintiff had reviewed and signed). By its terms, the agreement covers all claims arising out of Oliver's employment with JFE or the termination of that employment. [Record N. 6-4, p. 5] His allegations—that he was terminated for rejecting and reporting sexual harassment—fall squarely within the agreement. Finally, "[i]t is well established that Congress did not intend to exclude Title VII claims from arbitration." *Rodriguez v. Cracker Barrel Old Country Store, Inc.*, 2017 U.S. Dist. LEXIS 203761, at *27–28 (E.D. Ky. Dec. 12, 2017) (citing *Willis v. Dean Witter Reynolds, Inc.*, 948 F.3d 305, 309–10 (6th Cit. 1991)). Oliver must arbitrate his claims against JFE.

While he does not challenge his agreement with JFE, Oliver argues that he cannot be compelled to arbitrate his claims against Stonestreet because it is "a non-party to such arbitration clause." [Record No. 11, p. 1] In his view, the Court should allow this action to proceed against both defendants because he did not agree to arbitrate his claims against Stonestreet. [*Id.* at 1–2] For their part, the Defendants argue that JFE and Stonestreet were Oliver's "joint employers, which brings them within the listed parties" covered by the agreement. [Record No. 6-1, p. 3]

The Defendants have offered no factual or legal support for their assertion that Stonestreet is a party to the arbitration agreement. Rather, the record currently shows only that Stonestreet *may* fall under the arbitration agreement's definition of "the Company." [*See* Record No. 6-3, p. 2 (including "the Company's parent companies, shareholders, subsidiaries, divisions and/or affiliates and/or any of its or their respective officers, partners, directors, members, managers, employees, agents or employees") (emphasis omitted).] But without

further evidence that Stonestreet is in fact a parent company, shareholder, subsidiary, division, or affiliate of JFE, the Court cannot conclude that it is bound to the arbitration agreement.

The defendants' single argument to the contrary is unavailing. They argue that Oliver's allegation that he transported Stonestreet employees or clients to various locations establishes that Stonestreet is an "affiliate" of JFE. [Record No. 12, p. 2] This allegation is insufficient to support their conclusion. An affiliate is "[a] corporation that is related to another corporation by shareholdings or other means of control; a subsidiary, parent, or sibling corporation." *See Affiliate*, Black's Law Dictionary (11th ed. 2019); *see also Mounts v. Midland Funding LLC*, 257 F. Supp. 3d 930, 940 (E.D. Tenn. 2017) (applying Black's Law Dictionary to a similar dispute).

Stonestreet may very well be an affiliate of JFE. However, nothing currently in the record indicates that the above definition accurately applies to the Defendants' relationship. Additionally, while "nonsignatories may be bound to an arbitration agreement under ordinary contract and agency principles," the Defendants have failed to argue that any of those principles are applicable here. *Javitch*, 315 F.3d at 629 (citations omitted) ("Five theories for binding nonsignatories to arbitration agreements have been recognized: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel."). In short, the Defendants must provide more than conclusory statements to show that Oliver must arbitrate his claims against Stonestreet.[2]

---

[2] The Court notes that Oliver was far from "disingenuous" in calling attention to the dearth of evidence supporting the Defendant's argument. JFE and Stonestreet bear the burden of proving that Oliver's claims against Stonestreet are covered by the arbitration agreement. *Chao*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 323).

Finally, the Defendants' suggestion that "all of the arguments that Plaintiff makes with respect to joint employer status can be made to the Arbitrator" is without support. [Record No. 12, p. 2] "[T]he question of arbitrability . . . is undeniably an issue for judicial determination." *AT&T Technologies, Inc. v. Comm'ns Workers of Am.*, 475 U.S. 643, 649 (1986). The task of determining whether Oliver's claims against Stonestreet fall under the arbitration agreement is for the Court, not the arbitrator.

**IV.**

One issue remains: whether to dismiss Oliver's claims against JFE or stay them pending arbitration. The FAA provides that when a claim is "referable to arbitration," the Court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the term of the agreement." 9 U.S.C. § 3. However, "litigation in which all claims are referred to arbitration may be dismissed." *Hensel v. Cargill, Inc.*, 1999 U.S. App. 26600, at *9–10 (6th Cir. 1999) (unpublished table opinion). Here, all of Oliver's claims against JFE are referable to arbitration. In these circumstances, "[m]ost district courts in this circuit agree that the best procedure for enforcing arbitration agreements is to dismiss the court action without prejudice." *Jones, v. U-Haul Co. of Mass. & Ohio, Inc.*, 16 F. Supp. 3d 922, 944 (S.D. Ohio 2014) (collecting cases). The Court agrees that dismissal of Oliver's claims against JFE is appropriate here.

**V.**

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1.  Defendants' motion for summary judgment [Record No. 6] is **GRANTED**, with respect to Plaintiff Oliver's claims against Defendant Jackson Family Enterprises, Inc. Those claims are **DISMISSED**, without prejudice, to allow Oliver to pursue resolution pursuant to the arbitration agreement.

2.  Defendants' motion for summary judgment [Record No. 6] is **DENIED**, without prejudice, with respect to Plaintiff Oliver's claims against Defendant Stonestreet Farm, LLC. A motion for summary judgment may be refiled after further discovery is conducted.

Dated: May 4, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky